United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LISA FREDRICKSON,

       Plaintiff,

  v.

REGENTS OF UNIVERSITY OF
CALIFORNIA, et al.,

       Defendants.

                             /

No. C 06-03335 JSW

**ORDER GRANTING PETITION
TO COMPEL ARBITRATION
AND STAYING ARBITRATION**

Now before the Court is the motion of defendant BC Life & Health Insurance Company ("BC Life") to compel arbitration and to stay. Having carefully reviewed the parties' papers and the relevant legal authority, the Court hereby GRANTS the motion to compel arbitration and to stay the arbitration pending the outcome of the court action..

**BACKGROUND**

According to her complaint, Fredrickson is a "male to female transsexual, having undergone genital surgery in 1994." (Complt. at ¶ 13.) As a student at the University of California at Davis, University of California at Berkeley and University of California at Los Angeles, Fredrickson was insured under the Student Health Insurance Program ("SHIP"). In her complaint, Frederickson alleges that the SHIP Plan contains an exclusion from coverage for "[p]rocedures or treatments to change characteristics of the body to those of the opposite sex" and an exclusion from coverage for services and supplies which are not "medically necessary." (*Id.* at ¶¶ 19, 20.) Fredrickson alleges that Defendants, the Regents of University of California, BC Life, and Dr. Michelle Famula, violated her rights by "denying the benefits of the SHIP program to post-operative male to female transsexual individuals on the basis of their sex, by

**United States District Court**
For the Northern District of California

1  failing to accord post-operative male to female transsexual individuals equal treatment and

2  benefits."  (*Id.* at ¶ 42.)

3    Frederickson alleges breach of contract, breach of the covenant of good faith and fair

4  dealing, violations of the Unruh Civil Rights Act, violation of 42 U.S.C. § 1983, and intentional

5  infliction of emotional distress.

6    The SHIP Plan under which Fredrickson was insured contains a binding arbitration

7  clause which provides that any dispute or claim between Frederickson and BC Life would be

8  submitted to arbitration in accordance with the Judicial Arbitration and Mediation Services

9  ("JAMS") rules and procedures.  BC Life moves to compel arbitration.

10    The arbitration provision, entitled "Binding Arbitration," was set aside as its own

11  separate article and provides as follows:

12/13/14/15    Any dispute or claim of whatever nature, arising out of, in connection with, or in relation to this policy or breach or rescission thereof, in relation to care or delivery of care, including any claim based on contract, tort, or statute, must be resolved by arbitration if the amount sought exceeds the jurisdictional amount of the small claims court.  Any dispute or claim within the jurisdictional limits of the small claims court will be resolved in such court.

16/17    The Federal Arbitration Act will govern the interpretation and enforcement of all proceedings under this Binding Arbitration provision.  To the extent that the Federal Arbitration Act is inapplicable, or is held to require arbitration of a particular claim, state law governing agreement to arbitrate will apply.

18/19    The *insured person* and BC Life agree to be bound by this Binding Arbitration provision and acknowledge that they are each giving up their right to a trial by court or jury.

20/21    The *insured person* and BC Life agree to give up the right to participate in class arbitration against each other.  Even if applicable law permits class arbitration, the *insured person* waives any right to pursue, on a class basis, any such controversy or claim against BC Life and BC Life waives any right to pursue on a class basis any such controversy or claim against the *insured person*.

22/23    The arbitration findings will be final and binding except to the extent that state or Federal law provides for the judicial review of arbitration proceedings.

24/25/26/27    The arbitration is begun by the *insured person* making written demand on BC Life.  The arbitration will be conducted by the Judicial Arbitration and Mediation Services ("JAMS") according to its applicable Rules and Procedures.  If, for any reason, JAMS is unavailable to conduct the arbitration, the arbitration will be conducted by another neutral arbitration entity, by mutual agreement of the *insured person* and BC Life, or by order of the court, if the *insured person* and BC Life cannot agree.  The arbitration will be held at a time and location mutually agreeable to the *insured person* and BC Life.

28  (Declaration of Ronald R. Odom ("Odom Decl."), ¶ 3, Ex. A at 48.)

**ANALYSIS**

**A.      Legal Standards Applicable to Motions to Compel Arbitration.**

Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Once the Court has determined that an arbitration agreement involves a transaction involving interstate commerce, thereby falling under the FAA, the Court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the parties' dispute falls within that agreement.  9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  The parties in this case do not dispute that the claims at issue would fall within the scope of the FAA; the only issue is whether the arbitration provision is valid and enforceable.

The FAA represents the "liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).  Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been made and has not been honored," and the dispute falls within the scope of that agreement, the Court must order arbitration.  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).

Notwithstanding the liberal policy favoring arbitration, by entering into an arbitration agreement, two parties are entering into a contract.  *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989) (noting that arbitration "is a matter of consent, not coercion").  Thus, as with any contract an arbitration agreement is "subject to all defenses to enforcement that apply to contracts generally."  *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003).

Here, Fredrickson contends that the arbitration provision is not enforceable because it does not comply with California Health and Safety Code section 1363.1 and is both substantively and procedurally unconscionable.

3

**United States District Court**
For the Northern District of California

**B.      Compliance with California Law.**

Fredrickson contends that the Arbitration Agreement is invalid because it fails to comply with California Health and Safety Code § 1363.1 which sets out specific disclosure requirements for arbitration of health care disputes.  However, Fredrickson's student plan which was issued by BC Life, is governed by the California Insurance Code, not the Health and Safety Code.  The parallel provision, section 10123.19 of the California Insurance Code, became effective in 1994, and is therefore inapplicable to the plan at issue which became effective September 1, 1989.  *See* Declaration of Susan Ohanian in support of reply ("Ohanian Decl."), ¶ 4 (indicating effective date of policy); *see also* Cal. Ins. Code § 10123.19 (added by statute and effective 1994); *see also Wolitarksy v. Blue Cross*, 53 Cal. App. 4th 338, 348 (1997) ("The Wolitarskys argue that arbitration should not be compelled because the policy does not comply with Health and Safety Code section 1363.1 which specific disclosures which must be made in a binding arbitration clause in a health care service plan.  This statute was not enacted until 1994 (Stats. 1994, ch. 653, § 3).  It does not apply to this case, because the policies were issued before its enactment.")  Because the insurance code disclosure requirements were not enacted until after the effective date of the subject policy, Fredrickson's contention that the arbitration provision fails to comply with mandatory disclosure requirements in unavailing.[1]

**C.      The Arbitration Agreement is Not Unconscionable.**

"[U]nconscionability has both a procedural and a substantive element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results.  The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Armendariz v. Foundation Health Psychcare Services*, 24 Cal. 4th 83, 114 (2000) (citations omitted; emphasis in original).  However, procedural and substantive unconscionability "need not be present in the

---

[1] The Court does not find persuasive Plaintiff's citation to *Erickson v. Aetna Health Plans of California, Inc*., 71 Cal. App. 4th 646, 650 n.3 (1999), first mentioned at oral argument.  The court of appeal specifically did not rule on the issue of whether the lower court was correct in deciding that the date of the enactment of the disclosure statute was insignificant if there was any subsequent change in the operative plan.

4

United States District Court
For the Northern District of California

1  same degree. ... [T]he more substantively oppressive the contract term, the less evidence of

2  procedural unconscionability is required to come to the conclusion that the term is

3  unenforceable, and vice versa." *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267,

4  1282 (2004) (citing *Armendariz*, 24 Cal. 4th at 114).

5        Fredrickson argues that the arbitration provision is both procedurally and substantively

6  unconscionable.  First, she contends that it is procedurally unconscionable because she did not

7  personally negotiate the provision and did not freely accept its terms.  Fredrickson contends that

8  the arbitration provision is oppressive because BC Life possesses considerably more bargaining

9  power than the students enrolled under the plan and her signing the agreement was a

10  prerequisite to receiving an education and so it was entered on a 'take it or leave it' basis.

11  However, the record demonstrates that Fredrickson, as well as any student at the University of

12  California, had the option of selecting alternative health insurance outside of the SHIP plan

13  provided by BC Life.  (*See* Ohanian Decl., ¶ 6.)  Second, the lack of negotiation or inequity of

14  bargaining power is not present in the group medical insurance context because the agent who

15  negotiated the contract on behalf of the group possesses significant bargaining strength.  *See*

16  *Madden v. Kaiser Foundation Hospitals*, 17 Cal. 3d 699, 711 (1976).  Therefore, the Court

17  finds that the arbitration provision is not procedurally unconscionable.

18        Second, Fredrickson argues that the arbitration provision is substantively

19  unconscionable.  She contends that because the policy lacks a cost-splitting provision,

20  arbitration could be prohibitively expensive.  However, the policy references the JAMS rules

21  which require that BC Life absorb all costs but for $125, that the insured be allowed to choose

22  the location of the arbitration, and the insured not be forced to pay attorneys fees if she does not

23  prevail.  The Court does not find these provisions to be substantively unconscionable.

24

25

26

27

28

5

**United States District Court**
For the Northern District of California

1  **CONCLUSION**

2        Based on the foregoing reasons, the Court does not find that BC Life's arbitration

3  provision fails to comply with California disclosure regulations and does not find the provision

4  to be either procedurally or substantively unconscionable.  Therefore, the Court GRANTS BC

5  Life's motion to compel arbitration.  The Court also GRANTS the parties' request that the

6  Court stay the arbitration proceedings as to BC Life pending the outcome of this court action.

7  *See* California Code of Civil Procedure § 1281.2(c)(4).  As agreed during oral argument on the

8  present motion, BC Life shall participate in the Early Neutral Evaluation to be completed by

9  April 2, 2007.

10       Further, the hearing on the motion to dismiss filed by remaining defendants, the Regents

11  of the University of California and Dr. Michelle Famula, shall proceed on February 9, 2007 at

12  9:00 a.m.  Plaintiff's opposition to the motion must be filed by no later than **December 8, 2006**

13  and Defendants' reply brief, if any, must be filed by no later than December 15, 2006, as

14  required by Court order dated November 17, 2006.  The Court will strike any late-filed briefs.

15

16       **IT IS SO ORDERED.**

17

18  Dated:   December 4, 2006

19                                              JEFFREY S. WHITE
                                                UNITED STATES DISTRICT JUDGE

20

21

22

23

24

25

26

27

28

6